# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF MISSOURI
# WESTERN DIVISION

| | | |
|---|---|---|
| LAQUEENA RENEE BOLDEN, individually and on behalf of all others similarly situated, | ) ) ) ) | |
| Plaintiff, | ) ) | No. 4:24-cv-493 |
| v. | ) ) ) | |
| NEW MODEL LOGISTICS LLC, VALIANT MANAGEMENT AND HOLDINGS, LLC, and PHIL VICKERS, | ) ) ) ) ) | **JURY TRIAL DEMANDED** |
| Defendants. | ) | |

## COLLECTIVE ACTION AND CLASS ACTION COMPLAINT

Plaintiff, LaQueena Renee Bolden, individually and on behalf of all others similarly situated, by her attorneys, complains against Defendants New Model Logistics LLC, Valiant Management and Holdings, LLC, and Phil Vickers (collectively, "Defendants"), as follows:

### Nature of the Lawsuit

1. Defendant New Model Logistics LLC ("New Model") is primarily a finished vehicle logistics provider that provides specialty transportation, logistics and yard management services to manufacturers of new automobiles such as Ford Motor Company.

2. Defendant Valiant Management and Holdings, LLC ("Valiant") provides to its customers "Management, IT System Support, [and] Loss Prevention Services which includes but not limited to Safety Training, Quality Training, as well as Auditing and Claims Investigation."

3. Valiant's website lists a service it offers as "loss prevention." The website states that "investigation [of incidents] begins immediately and includes members of local team as well as Valiant Loss Prevention and Valiant Operations."

4. Valiant's website states that it provides "the latest in GPS technology and voice transmission recordings are used to assist in investigations and accountability."

5. Valiant's website also includes a link to "weather conditions" at its "customers' (sic) facilities." The links include, "Kansas City Yard," "Kansas City Prep" and "Kansas City Shuttle."

6. Upon information and belief, Valiant provides management services, including human resources and other employment-related support and services, to New Model.

7. Defendant Phil Vickers ("Vickers") is an individual who resides in the State of Kentucky.

8. Plaintiff and other similarly situated individuals worked for Defendants performing duties including loss prevention of Ford automobiles, under job titles including, but not limited to, First Responder. Defendants misclassified these workers as independent contractors instead of employees (the "Misclassified Workers").

9. The Misclassified Workers perform various tasks relating to security, including, but not limited to, ensuring that large lots of new unsold Ford automobiles are not vandalized, damaged or stolen.

10. These lots are located in various parts of the country, including, but not limited to, Kansas City, Missouri.

11. The Misclassified Workers are economically dependent on Defendants for work.

12. Defendants paid the Misclassified Workers an hourly rate for all time worked, including time worked over 40 hours in one week.

13. The Misclassified Workers regularly worked more than 40 hours in a single workweek.

14. Defendants failed to pay the Misclassified Workers in accordance with the overtime provisions of the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq*. (the "FLSA"), and the Missouri Minimum Wage Law, Mo. Rev. Stat. § 290.500 *et seq*. (the "MMWL"), because they did not pay the Misclassified Workers overtime pay when they worked over 40 hours in individual workweeks.

15. Plaintiff brings this action on behalf of herself and all other similarly situated Misclassified Workers who, due to Defendants' misclassification scheme, were not paid all earned overtime pay for time they worked in excess of forty (40) hours in one or more individual workweeks, in violation of the FLSA and MMWL.

16. Plaintiff brings her FLSA overtime claims as a collective action pursuant to 29 U.S.C. 216(b) on behalf of all Misclassified Workers who worked for Defendants in the United States. Plaintiff brings her MMWL overtime claims as a class action pursuant to Fed. R. Civ. P. 23(b)(3) on behalf of all Misclassified Workers who worked for Defendants in Missouri.

### **The Parties**

17. Plaintiff is an individual who at all times material to this Complaint resided in Kansas City, Missouri, and has at all times material to this Complaint been a citizen of the State of Missouri. Plaintiff worked for Defendants in this judicial district, specifically in Kansas City, Missouri from approximately January 21, 2024, until July 8, 2024.

18. New Model is a Kentucky limited liability company with its principal place of business in Simpsonville, Kentucky.

19. Valiant is a Kentucky limited liability company with its principal place of business in Simpsonville, Kentucky.

20. Vickers is an individual who resides in and is a citizen of the State of Kentucky who is also a member of New Model and Valiant.

21. Defendants oversee a facility and conduct business in this judicial district.

## Jurisdiction and Venue

22. Jurisdiction is conferred by 28 U.S.C. § 1331 and 29 U.S.C. § 216(b), on the basis of federal question jurisdiction, as the matter concerns an action arising under the laws of the United States.

23. This Court has supplemental jurisdiction over the MMWL class claims in this action pursuant to 28 U.S.C. § 1367.

24. Venue is proper in this District under 28 U.S.C. § 1391 because the events forming the basis of the suit occurred in this district and Plaintiff was harmed in this district.

## Employee vs. Independent Contractor Under the FLSA and MMWL

25. The FLSA requires employers to pay their employees 1.5 times their regular rate of pay for all time worked in excess of forty (40) hours in a workweek. 29 U.S.C. § 207.

26. The United States Department of Labor ("DOL") recently promulgated regulations establishing the test and factors to consider when determining whether a worker is an employee who is protected by the FLSA's provisions, or an independent contractor who is not protected by the provisions of the FLSA. *See* 29 U.S.C. § 795.100 *et seq*. (effective March 11, 2024).

27. The regulations were intended to confirm that the economic reality test that consistently has been applied by the courts and the DOL since the 1940s is the standard to determine employee vs. independent contractor status. *See* 89 FR 1638.

28. As the DOL explained:

the [FLSA's] minimum wage, overtime pay, and recordkeeping obligations apply only to workers who are covered employees. Workers who are independent contractors are not covered by these protections. Labeling employees as "independent contractors" does not make these protections inapplicable. A determination of whether a worker is an employee or independent contractor under the Act focuses on the economic realities of the worker's relationship with the

4

worker's potential employer and whether the worker is either economically dependent on the potential employer for work or in business for themselves.

29 U.S.C. § 795.105(a).

29. The DOL further explained that "economic dependence" is the ultimate inquiry:

The [FLSA's] definitions are meant to encompass as employees all workers who, as a matter of economic reality, are economically dependent on an employer for work. A worker is an independent contractor, as distinguished from an employee under the Act, if the worker is, as a matter of economic reality, in business for themself. Economic dependence does not focus on the amount of income the worker earns, or whether the worker has other sources of income.

29 U.S.C. § 795.105(b).

30. Finally, the DOL set forth several factors to consider in determining whether a worker is an employee or an independent contractor, including: (a) the worker's opportunity for profit or loss depending on managerial skill; (b) investments by the worker and the potential employer; (c) the degree of permanence of the work relationship; (d) the nature and degree of control the employer has over the performance of the worker's work; (e) the extent to which the work performed is an integral part of the employer's business; and (f) the worker's level of skill and initiative to perform the work. *See* 29 U.S.C. § 795.110(b). In considering these factors, a "totality-of-the-circumstances" analysis is to be used, and no single factor is dispositive. *Id*., § 795.110(a).

31. The Missouri Minimum Wage Law also requires employers to pay their employees 1.5 times their regular rate of pay for all time worked in excess of forty (40) hours in a workweek. Mo. Rev. Stat. § 290.505(1).

32. In interpreting the overtime provisions of the Missouri Minimum Wage Law, that Act explicitly states:

Except as may be otherwise provided under sections 290.500 to 290.530, this section shall be interpreted in accordance with the Fair Labor Standards Act, 29

U.S.C Section 201, et seq., as amended, and the Portal to Portal Act, 29 U.S.C. Section 251, et seq., as amended, and any regulations promulgated thereunder.

Mo. Rev. Stat. § 290.505(4).

## Factual Allegations

33. At all times relevant to this Complaint, Plaintiff worked as a First Responder for Defendants. This job included patrolling large lots of unpurchased Ford automobiles in Kansas City, Missouri to ensure that the automobiles were not stolen, damaged or vandalized.

34. As part of her employment, Plaintiff would occasionally work over 40 hours a week and not receive overtime pay.

35. As part of her employment, Plaintiff, like the Misclassified Workers, was required to carry an identification badge/card. That badge/card expressly identified Plaintiff and the Misclassified Workers as "employees."

36. The badge/card identifies both New Model and Valiant Management & Holdings, LLC.

37. The Defendants, as they did with the other Misclassified Workers, closely controlled the work Plaintiff performed in her employment. As one example, Defendants always surveilled Plaintiff and the Misclassified Workers during their shifts and required them to move around in the lots at least every 15 minutes. Failure to do so would result in a reprimand or discharge.

38. The work performed by Plaintiff and the Misclassified Workers was an integral part of Defendants' business, as the primary purpose of their business was to safeguard unsold Ford automobiles for Ford Motor Company.

39. At all times relevant to this Complaint, Plaintiff was economically dependent on Defendants.

40. At all times relevant to this Complaint, the other Misclassified Workers were economically dependent on Defendants.

41. At all times relevant to this Complaint, Plaintiff was not employed for herself.

42. At all times relevant to this Complaint, the other Misclassified Workers were not employed for themselves.

43. While working for Defendants, Plaintiff and the other Misclassified Workers did not have the opportunity for profit or loss based on managerial skills.

44. In particular, Plaintiff and the other Misclassified Workers could not:

   a. Meaningfully negotiate the charge or pay for the work they provided to Defendants;

   b. Accept or decline jobs from Defendants or choose the order and/or time in which the jobs were performed;

   c. Engage in marketing, advertising, or other efforts to secure more work; or

   d. Make decisions to hire others, purchase materials and equipment, and/or rent space.

45. While working for Defendants, Plaintiff and the other Misclassified Workers did not make any investments that were capital or entrepreneurial in nature. Plaintiff and the other Misclassified Workers did not make any investments that supported any independent business or served a business-like function.

46. The work relationship between Defendants and the Misclassified Workers was indefinite in duration, continuous, and exclusive of work for other employers.

47. The Defendants directly controlled the performance of Plaintiff and the other Misclassified Workers' work.

48. On information and belief, Vickers had the authority to direct Plaintiff's work.

49. Defendants set the schedule of Plaintiff and the other Misclassified Workers' work, and Plaintiff and the other Misclassified Workers had no control over their schedule.

50. Defendants supervised the performance of Plaintiff and the other Misclassified Workers' work.

51. Defendants used technological means to supervise the performance of Plaintiff and the other Misclassified Workers' work to ensure they were properly safeguarding lots of Ford automobiles.

52. Defendants reserved and exercised the right to supervise Plaintiff and the other Misclassified Workers.

53. Defendants reserved and exercised the right to discipline Plaintiff and the other Misclassified Workers.

54. Defendants placed demands or restrictions on Plaintiff and the other Misclassified Workers that did not allow them to work for others or work when they choose.

55. When Plaintiff worked for Defendants, Plaintiff's primary job duties included patrolling large lots of unpurchased Ford automobiles in Kansas City, Missouri to ensure that the automobiles were not stolen, damaged or vandalized.

56. The work Plaintiff and the other Misclassified Workers performed is an integral part of Defendants' business.

57. The work Plaintiff and the other Misclassified Workers performed is critical, necessary, and central to Defendants' business.

58. Plaintiff and the other Misclassified Workers did not use specialized skills in performing work for Defendants that materially differed from work performed by security guards.

59. Plaintiff and the other Misclassified Workers received training from Defendants to perform their work.

60. Defendants required Plaintiff and the other Misclassified Workers to work over 40 hours in one or more individual workweeks.

61. While working for Defendants, Plaintiff and the other Misclassified Workers did in fact work over 40 hours in one or more individual workweeks.

62. Defendants misclassified Plaintiff and the other Misclassified Workers as independent contractors and did not pay them pursuant to the overtime provisions of the FLSA and MMWL.

63. On information and belief, Vickers made the decision to misclassify Plaintiff and the other Misclassified Workers as independent contractors instead of employees.

64. Defendants paid Plaintiff and the other Misclassified Workers a set hourly rate for all time worked, including time worked over 40 hours in an individual workweek.

65. When Plaintiff and the other Misclassified Workers worked over 40 hours in individual workweeks, Defendants did not pay them overtime at one-and-one-half times their regular rate of pay.

66. New Model is an "enterprise" as defined by the FLSA in 29 U.S.C. § 203(r)(1).

67. New Model is an enterprise engaged in commerce or in the production of goods for commerce as defined by the FLSA in 29 U.S.C. § 203(s)(1)(A).

68. On information and belief, New Model has had more than $500,000 in sales made or business done in each of the last three calendar years.

69. On information and belief, Valiant has had more than $500,000 in sales made or business done in each of the last three calendar years.

70. While working for Defendants, Plaintiff and the other Misclassified Workers were "employees" of Defendants, as such term is defined by Section 203(e) of the FLSA, 29 U.S.C. § 203(e), and Section 290.500(3) of the MMWL, Mo. Rev. Stat. § 290.500(3).

71. New Model was Plaintiff's and the other Misclassified Workers' "employer", as such term is defined by Section 203(d) of the FLSA, 29 U.S.C. § 203(d), and Section 290.500(4) of the MMWL, Mo. Rev. Stat. § 290.500(4).

72. On information and belief, Valiant was Plaintiff's and the other Misclassified Workers' "employer", as such term is defined by Section 203(d) of the FLSA, 29 U.S.C. § 203(d), and Section 290.500(4) of the MMWL, Mo. Rev. Stat. § 290.500(4).

73. On information and belief, Vickers was Plaintiff's and the other Misclassified Workers' "employer", as such term is defined by Section 203(d) of the FLSA, 29 U.S.C. § 203(d), and Section 290.500(4) of the MMWL, Mo. Rev. Stat. § 290.500(4).

**Collective Action Allegations**

74. Plaintiff brings Count I of this Complaint as a collective action pursuant to 29 U.S.C. § 216(b) on behalf of herself and all other current and former Misclassified Workers. Plaintiff's consent form to participate in the collective action is attached to this Complaint as Exhibit A.

75. Plaintiff's counsel seek to send notice of this lawsuit to the following described persons pursuant to Count I:

> All individuals who worked for Defendants as independent contractors in the last three years who worked over forty hours in a workweek but did not receive overtime pay.

76. There are questions of law or fact common to the persons sought to be represented as part of this collective action, including whether the putative collective members were

misclassified as independent contractors, whether they worked in excess of forty (40) hours in a workweek and if so, whether they were paid 1.5 times their regular rate of pay for all time worked in excess of forty (40) hours in a workweek.

77. Plaintiff is similarly situated to the putative collective members because Defendants misclassified them as independent contractors and failed to pay them the full amount of overtime pay due to them for all time worked over 40 hours in individual workweeks, as required by the FLSA.

78. Plaintiff is similarly situated to the employees sought to be represented in this collective action, as Plaintiff's claims are typical of the claims of those persons.

79. Plaintiff's claims or defenses are typical of the claims or defenses of the persons sought to be represented in this collective action.

80. This is not a collusive or friendly action. Plaintiff has retained counsel experienced in complex employment litigation, and Plaintiff and her counsel will fairly and adequately protect the interests of the persons sought to be represented in this collective action.

81. A collective action is the most appropriate method for the fair and efficient resolution of the matters alleged in Count I.

82. At all relevant times, Plaintiff and the persons sought to be represented as part of this collective action performed work for Defendants.

83. At all relevant times, Defendants paid Plaintiff and the persons sought to be represented as part of this collective action, to work.

84. Defendants are aware or should have been aware that the FLSA required them to pay Plaintiff and the persons sought to be represented in the collective action overtime pay for all time they worked more than 40 hours in individual workweeks.

## Class Action Allegations

85. Plaintiff brings Counts II as a class action pursuant to Fed. R. Civ. P. 23(b)(3) on behalf of herself and all other current and former Misclassified Workers who worked for Defendants in Missouri.

86. With respect to Plaintiff's MMWL claims, Plaintiff seeks to represent a class that is comprised of and defined as:

> All individuals who worked for Defendants as independent contractors in Missouri in the last three years who worked over forty hours in a workweek but did not receive overtime pay (the "MMWL Class").

87. This action is being brought as a class action pursuant to Fed. R. Civ. P. 23(b)(3) because the MMWL Class is so numerous that joinder of all class members is impracticable.

88. Plaintiff and the other workers in the MMWL Class are similarly situated to one another because Defendants misclassified them as independent contractors and failed to pay them the full amount of overtime pay due to them for all time worked over 40 hours in individual workweeks, as required by the MMWL.

89. Plaintiff and the other workers in the MMWL Class are similarly situated because they all shared similar job titles, job duties, training, and compensation, among other things.

90. Plaintiff and the other workers in the MMWL Class have been detrimentally affected by Defendants' practice of misclassifying them as independent contractors instead of employees and paying them a set hourly rate for all time worked, including time worked over 40 hours in an individual workweek.

91. Plaintiff and the other workers in the MMWL Class have been detrimentally affected by Defendants' failure to pay them overtime wages for all time they worked for Defendants more than 40 hours in an individual workweek.

92. Furthermore, members of the MMWL Class still working for Defendants may be reluctant to raise individual claims for fear of retaliation and a loss of their livelihood.

93. The issues involved in this lawsuit present common questions of law and fact; these common questions of law and fact predominate over the variations that may exist between members of the MMWL Class, if any.

94. Plaintiff and the members of the MMWL Class, as well as Defendants, have a commonality of interest in the subject matter and the remedy sought.

95. Plaintiff can fairly and adequately represent and protect the interests of the members of the MMWL Class.

96. If individual actions were required to be brought by each member of the MMWL Class injured or affected, the result would be a multiplicity of actions, creating a hardship to the members of the MMWL Class, to the Court, and to Defendants. Accordingly, a class action is an appropriate method for the fair and efficient adjudication of this lawsuit and distribution of the common fund to which the MMWL Class is entitled.

97. Plaintiff has retained counsel experienced in complex employment litigation and in class action litigation. Plaintiff's counsel are competent and experienced in litigating large wage and hour and other employment class actions.

98. Plaintiff and her counsel will fairly and adequately protect the interests of the MMWL Class.

## COUNT I
### Violation of the Fair Labor Standards Act
**(Collective Action)**

99. Plaintiff re-alleges and incorporates by reference Paragraphs 1 through 84 into this Count.

100. This count arises from Defendants' violation of the FLSA by failing to pay overtime wages to Plaintiff and other Misclassified Workers when they worked over 40 hours in individual workweeks.

101. Plaintiff, individually and on behalf of the members of the putative collective action, seeks to recover from Defendants unpaid wages, liquidated damages, attorneys' fees, and costs pursuant to Section 16(b) of the FLSA, 29 U.S.C. § 216(b).

102. At all times relevant to this Complaint, and at Defendants' request, Plaintiff and the members of the proposed putative collective described above performed work for Defendants.

103. Plaintiff and the members of the proposed putative collective were directed by Defendants to work, and did work, over 40 hours in one or more individual workweeks.

104. Defendants violated the FLSA by failing to pay overtime to Plaintiff and the members of the putative collective described above at a rate of one-and-one-half times their regular rate of pay when they worked over 40 hours in one or more individual workweeks.

105. Defendants' violations of the FLSA were willful.

106. Plaintiff and the members of the putative collective described above have been damaged by not being paid the full amount of overtime wages due to them for all time worked more than 40 hours in a workweek, in an amount not presently ascertainable, during the relevant time period.

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, demands a trial by jury on this and all counts so triable, and prays that this Court award her the following relief against Defendants, under Count I, as follows:

A. Conditionally certify the collective described in paragraph 75, and grant Plaintiff's counsel leave to send notice of this lawsuit to the members of the collective and allow them the opportunity to opt-in as party plaintiffs pursuant to Section 16(b) of the FLSA, 29 U.S.C. § 216(b);

B. Award all unpaid overtime wages due to Plaintiff and all persons who opt-in as party plaintiffs;

C. Award liquidated damages equal to the unpaid overtime compensation due;

D. Award reasonable attorneys' fees and costs incurred in filing and prosecuting this lawsuit;

E. Award all applicable pre-judgment and post-judgment interest amounts, if any; and,

F. Grant such further relief as this Court deems equitable and just.

## COUNT II
### Violation of the Missouri Minimum Wage Law
### (Class Action)

90. Plaintiff re-alleges and incorporates by reference Paragraphs 1 through 73 and 85 through 98 into this Count.

91. This Court has supplemental jurisdiction over the matters alleged herein pursuant to 28 U.S.C. § 1367.

92. The matters set forth in this Count II arise from Defendants' violation of the overtime compensation provisions of the Missouri Minimum Wage Law, Mo. Rev. Stat. § 290.505. Plaintiff brings this action on her own behalf and on behalf of the members of the MMWL Class pursuant to Mo. Rev. Stat. § 290.527 and Fed. R. Civ. P. 23(b)(3).

93. Plaintiff and other similarly situated Misclassified Workers were "employees" of Defendants, as the term "employee" is defined in Section 290.500(3) of the MMWL, Mo. Rev. Stat. § 290.500(3).

94. At all relevant times, New Model was an "employer" of Plaintiff and other similarly situated Misclassified Workers, as the term "employer" is defined by Section 290.500(4) of the MMWL, Mo. Rev. Stat. § 290.500(4).

95. At all relevant times, Valiant was an "employer" of Plaintiff and other similarly situated Misclassified Workers, as the term "employer" is defined by Section 290.500(4) of the MMWL, Mo. Rev. Stat. § 290.500(4).

96. At all relevant times, Vickers was an "employer" of Plaintiff and other similarly situated Misclassified Workers, as the term "employer" is defined by Section 290.500(4) of the MMWL, Mo. Rev. Stat. § 290.500(4).

97. Pursuant to Mo. Rev. Stat. § 290.505, for all weeks during which Plaintiff and the members of the MMWL Class worked more than forty (40) hours, Plaintiff and members of the MMWL Class were entitled to be compensated at one and one-half times their regular hourly rate of pay for all time worked more than forty (40) hours per week.

98. Defendants did not pay Plaintiff and members of the MMWL Class one and one-half times their regular hourly rate of pay for all time worked more than forty (40) hours per week.

99. Defendants violated the Missouri Minimum Wage Law by failing to compensate Plaintiff and the members of the MMWL Class at one and one-half times their regular hourly rate of pay for all time worked more than forty (40) hours per week.

100. Pursuant to Mo. Rev. Stat. § 290.527, Plaintiff and the members of the MMWL Class are entitled to recover damages in the full amount of the unpaid wages, plus an additional amount equal to twice the unpaid wages as liquidated damages.

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, demands a trial by jury on this and all counts so triable, and prays that this Court award her the following relief against Defendants, under Count II, as follows:

A. Certify the proposed MMWL Class pursuant to Fed. R. Civ. P. 23;

B. Award all unpaid overtime wages due to Plaintiff and the putative MMWL Class members;

C. Award liquidated damages equal to twice the unpaid overtime compensation due;

D. Award reasonable attorneys' fees and costs incurred in filing and prosecuting this lawsuit;

E. Award all applicable pre-judgment and post-judgment interest amounts, if any; and

F. Grant such further relief as this Court deems equitable and just.

Respectfully submitted,

LaQueena Renee Bolden, individually, and on behalf of all others similarly situated,

By: /s/ Christopher E. Roberts
    One of Plaintiff's attorneys

| | |
|---|---|
| David T. Butsch #37539* | James X. Bormes (IL Bar No. 6202568)* |
| Christopher E. Roberts #61895 | Catherine P. Sons (IL Bar No. 6290805)* |
| Butsch Roberts & Associates LLC | Law Office of James X. Bormes, P.C. |
| 7777 Bonhomme Ave, Ste. 1300 | 8 South Michigan Avenue, Suite 2600 |
| Clayton, MO  63105 | Chicago, IL  60603 |
| Tel. (314) 863-5700 | (312) 201-0575 |
| butsch@butschroberts.com | jxbormes@bormeslaw.com |
| roberts@butschroberts.com | cpsons@bormeslaw.com |

*Application for admission *pro hac vice* forthcoming